UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 05-10352 |
| Plaintiff - Appellee, | D.C. No. CR-97-00095-01-DOC |
| v. | |
| ROY TOVES CABACCANG, | **JUDGMENT** |
| Defendant - Appellant. | |

Appeal from the United States District Court for the District Of Guam (Hagatna).

This cause came on to be heard on the Transcript of the Record from the United States District Court for the District Of Guam (Hagatna) and was duly submitted.

On consideration whereof, it is now here ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and hereby is **AFFIRMED**.

Filed and entered 03/30/07

A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

JUN 21 2007

by: _____
Deputy Clerk

ORIGINAL

INTERNAL USE ONLY: Proceedings include all events.
05-10352 USA v. Cabaccang

UNITED STATES OF AMERICA          Karon V. Johnson, Esq.
    Plaintiff - Appellee          FAX 671/472-7334
                          671/472-7332 X-146
                          Ste. 500
                          [COR LD NTC aus]
                          USHA - OFFICE OF THE U.S.
                          ATTORNEY
                          108 Hernan Cortez Ave.
                          Hagatna, GU 96910


    v.

ROY TOVES CABACCANG          Richard D. Rome, Esq.
    Defendant - Appellant          FAX 818/994-1891
                          818/994-8761
                          Penthouse "C"
                          [COR LD NTC cja]
                          LAW OFFICES OF RICHARD D. ROME
                          7100 Hayvenhurst Ave.
                          Van Nuys, CA 91406

# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

v.

ROY TOVES CABACCANG,
                    *Defendant-Appellant.*

No. 05-10352

D.C. No.
CR 97-0095 DOC

OPINION

Appeal from the District Court of Guam
David O. Carter, District Judge, Presiding

Argued and Submitted
January 8, 2007—San Francisco, California

Filed March 30, 2007

Before: Procter Hug, Jr., A. Wallace Tashima, and
William A. Fletcher, Circuit Judges.

Opinion by Judge Tashima

---

## SUMMARY

---

### Criminal Law and Procedure/Sentencing

The court of appeals affirmed a judgment of the district court. The court held that a district court correctly reinstated a defendant's previously vacated conspiracy conviction after vacating his continuing criminal enterprise (CCE) conviction on grounds that did not affect his lesser-included conspiracy conviction.

3661

Appellant Roy Cabaccang and two of his brothers were convicted in district court in Guam of crimes relating to a drug ring that involved the shipment of methamphetamine from California to Guam and its distribution in Guam. In Count I, Cabaccang was convicted for a CCE, and the jury found true the special allegations that Cabaccang was the leader of the CCE, and that the violations referred to in Count I involved at least 3,000 grams of methamphetamine or at least 30,000 grams of a mixture or substance containing a detectable amount of methamphetamine. At sentencing, the district court vacated Cabaccang's conspiracy convictions under Counts II and III, conspiracy to import methamphetamine, as lesser-included offenses of Count I, but it let his other convictions stand. On appeal, the court of appeals affirmed the Cabaccangs' convictions and sentences but reversed their importation-related convictions, holding en banc that the transport of drugs on a nonstop flight through international airspace from one location in the United States to another does not constitute importation within the meaning of 21 U.S.C. § 952(a). The court of appeals remanded for the district court to reconsider Cabaccang's conviction for CCE because the CCE charge relied, in part, on the importation charges as predicate offenses. The court of appeals affirmed the convictions that were not importation-related and adopted the decisions of the prior, three-judge panel with respect to those counts. Cabaccang moved for clarification of the en banc court's remand, seeking remand of his conviction and sentence on Count VI, possession with intent to distribute methamphetamine. The court of appeals granted the motion and remanded Count VI. The district court vacated Cabaccang's Count I conviction, but it found that the jury's special allegation findings, regarding Cabaccang's role as a leader of the enterprise and the amount of methamphetamine, were not affected by the vacating of the importation offenses. The court reinstated Cabaccang's conviction on Count II, and added a two-level enhancement for possession of a firearm, based on Cabaccang's convictions under Counts VII and VIII. The court sentenced Cabaccang to life imprisonment on Count II.

Cabaccang appealed his sentence.

[1] Because Cabaccang's Count II conviction had been vacated and was not before the en banc court, the clarification order did not preclude the district court from reconsidering that conviction. [2] When a jury convicts on both a greater and a lesser included offense, the district court must enter a final judgment of conviction on the greater offense and vacate the conviction on the lesser offense. [3] The Fourth Circuit has held that a district court correctly reinstated a previously vacated conspiracy conviction. The Seventh Circuit also held that a district court had authority to reinstate a conspiracy conviction, noting that the Supreme Court had specifically validated this practice. [4] It had to be concluded that the district court correctly reinstated Cabaccang's previously vacated conspiracy conviction after vacating his CCE conviction on grounds that did not affect the lesser-included conspiracy conviction.

[5] As to whether the district court erroneously relied on jury findings relating to Count I in imposing his Count II sentence, Count II was alleged in the indictment to be one of the violations constituting the CCE. The jury verdict form therefore provided on its face that the drug quantity finding in Count I applied to each of the other counts. [6] The special allegation findings were not tainted by the importation offenses. [7] Whether or not the drugs were "imported" in the legal sense did not affect the jury's finding that Cabaccang's conduct—all of which came within the scope of the conspiracy charge—involved at least 3,000 grams of methamphetamine.

[8] Impermissible double counting occurs where one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by the application of another part of the guidelines. There is, however, nothing wrong with double counting when it is necessary to make the defendant's sentence reflect

the full extent of the wrongfulness of his conduct. **[9]** The offense level increase for Cabaccang's sentence on Count II accordingly was based on different conduct from the conduct on which his sentence for Counts VII and VIII was based. The application of the enhancement for firearm possession did not constitute impermissible double counting.

**[10]** The court of appeals also ruled that the district court did not err in enhancing Cabaccang's sentence for his role in the offense; **[11]** the offense level increase for obstruction of justice was not erroneous; and **[12]** the sentence imposed by the district court was reasonable. The judgment of the district court had to be affirmed.

---

## COUNSEL

Richard D. Rome, Van Nuys, California, for the defendant-appellant.

Karon V. Johnson, Assistant United States Attorney, Hagatna, Guam, for the plaintiff-appellee.

---

## OPINION

TASHIMA, Circuit Judge:

This appeal comes to us following our remand to the district court for resentencing. Roy Toves Cabaccang, James Toves Cabaccang, and Richard Toves Cabaccang[1] were convicted on numerous charges relating to a drug ring that involved the shipment of methamphetamine from California to Guam and its distribution in Guam. We affirmed their con-

---

[1]The Cabaccangs are brothers. For ease of reference, we refer to them by their first names.

victions and sentences in two unpublished memoranda dispositions. We subsequently held en banc, however, that the transport of drugs on a nonstop flight through international airspace from one location in the United States to another does not constitute importation within the meaning of 21 U.S.C. § 952(a). *United States v. Cabaccang*, 332 F.3d 622 (9th Cir. 2003) (en banc) ("*Cabaccang I*"). We therefore reversed all three of the Cabaccangs' importation-related convictions and remanded for the district court to reconsider Roy's conviction for a continuing criminal enterprise ("CCE") because the CCE charge relied, in part, on the importation charges as predicate offenses. We affirmed the convictions that were not importation-related and adopted the decisions of the prior, three-judge panel with respect to those counts. *Id.* at 637.

The Cabaccangs then filed a motion for clarification of the en banc court's remand, seeking remand of James' and Richard's convictions and sentences on Count II of the indictment, conspiracy to distribute methamphetamine, and of Roy's conviction and sentence on Count VI, possession with intent to distribute methamphetamine. We denied the motion as to Count II, but remanded Count VI. *United States v. Cabaccang*, 341 F.3d 905 (9th Cir. 2003) (en banc) ("*Cabaccang II*"). All three brothers appealed the sentences imposed by the district court on remand.[2] We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and we affirm the district court.

---

[2]The three appeals were consolidated by order of this court, and the cases were argued together. We address in this opinion only the issues raised by Roy. The appeals of Richard and James, Nos. 05-10353 and 05-10354, are addressed in a separate, concurrently-filed, unpublished memorandum disposition. The facts relevant only to their appeals accordingly are omitted.

## BACKGROUND

The following facts are taken from the en banc opinion:

> In the early 1990s, Roy Cabaccang began selling
> methamphetamine out of his house in Long Beach,
> California, to customers introduced to him by his
> younger brothers Richard and James. The Cabac-
> cangs eventually expanded their operation to include
> large-scale shipments of methamphetamine to Guam
> for local distribution. To transport the drugs to
> Guam, Roy recruited various people to fly from Los
> Angeles to Guam with packages of methamphet-
> amine concealed under their clothing. . . . After
> Roy's associates sold the methamphetamine in
> Guam, they sent the proceeds back to California via
> courier and wire transfer. Each of the Cabaccang
> brothers received wire transfers of profits from the
> drug sales.

*Cabaccang I*, 332 F.3d at 623-24.

An indictment, returned in 1997, charged the Cabaccangs
with the following counts: Count I, CCE, in violation of 21
U.S.C. § 848 (Roy); Count II, conspiracy to distribute
methamphetamine, in violation of 21 U.S.C. §§ 841 and 846
(all three); Count III, conspiracy to import methamphetamine,
in violation of 21 U.S.C. §§ 952(a), 960, and 963 (all three);
Count IV, conspiracy to launder monetary instruments, in vio-
lation of 18 U.S.C. § 1956 (all three); Count V, importation
of methamphetamine (Roy, Richard); Count VI, possession of
methamphetamine with intent to distribute (Roy); Counts VII
and VIII, possession and receipt of a firearm by a felon, in
violation of 18 U.S.C. § 922(g) (Roy); Counts IX, X, and XI,
attempted importation of methamphetamine (Roy).

Following a jury trial, all three brothers were convicted on
all of the charges against them. In connection with Roy's

CCE conviction, the jury found the special allegations in the verdict form to be true: first, that Roy was the leader of the CCE; and second, that the violations referred to in Count I involved at least 3,000 grams of methamphetamine or at least 30,000 grams of a mixture or substance containing a detectable amount of methamphetamine.

At Roy's original sentencing, the government conceded that Roy's conspiracy convictions under Counts II and III had to be vacated as lesser-included offenses of Count I, pursuant to *Rutledge v. United States*, 517 U.S. 292 (1996).[3] The district court agreed that *Rutledge* controlled and accordingly vacated Roy's convictions under Counts II and III, but it let his other convictions stand.

In their first appeals, we affirmed all three Cabaccangs' convictions and, rejecting their claims under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), affirmed their sentences. *See United States v. Cabaccang*, 36 Fed. Appx. 234 (9th Cir. 2002); *United States v. Cabaccang*, 16 Fed. Appx. 566 (9th Cir. 2001). We then reheard the case en banc in order to reexamine the application of the importation statute.

We concluded in *Cabaccang I* that "21 U.S.C. § 952(a) does not proscribe . . . the transport of drugs on a nonstop flight between two locations within the United States." *Cabaccang I*, 332 F.3d at 636. After holding that the importation-related convictions should be reversed, we addressed the impact of this holding on Roy's CCE conviction:

> The effect of our decision on Roy Cabaccang's conviction for conducting a continuing criminal enter-

---

[3]The Supreme Court held in *Rutledge* that a conspiracy charge under 21 U.S.C. § 846 is a lesser-included offense of CCE, 21 U.S.C. § 848, and therefore ordered that one of the convictions and its concurrent sentence be vacated. *Rutledge*, 517 U.S. at 307.

3668 UNITED STATES v. CABACCANG

> prise (Count I) is not so clear. Count I incorporated the importation charges as predicate offenses, and the jury was instructed that to convict on that count it had to find that "the Defendant committed any one or more of the following federal narcotics trafficking offenses: conspiracy to distribute methamphetamine; . . . or, conspiracy to import methamphetamine; or, importation of methamphetamine; or, possession of methamphetamine with intent to distribute; or, attempted importation of methamphetamine." The jury was also instructed that it must find that the offenses were part of a series of three or more offenses committed by the defendant, and that the defendant committed the offenses together with five or more persons. Finally, the jury was instructed that all members of the jury must unanimously agree on which three narcotics offenses the defendant committed and on which five or more persons committed the offenses together with the defendant. The jury's guilty verdict on Count I did not specify which narcotics offenses formed the basis of the jury's finding.

*Id.* at 637. We accordingly remanded for the district court to determine whether Roy's CCE conviction could stand. Notwithstanding our remand of the CCE count, however, we affirmed the convictions and sentences on the counts that were not importation-related. *Id.*

In their Motion for Clarification Regarding Remand, Richard and James argued that their sentences on Count II, conspiracy to distribute methamphetamine, should be remanded because the importation charge and theory were intertwined with Count II of the indictment. Roy sought remand of his sentence on Count VI, possession with intent to distribute methamphetamine, because his Count VI sentence was concurrent with Count I, which had been remanded, and with Count V, which was one of the reversed importation counts. The government opposed the motion.

*Cabaccang II* granted the motion with respect to Roy's Count VI and remanded that count to the district court, instructing the district court to reconsider Roy's sentence on Count VI only if it reversed his conviction on Count I. *Cabaccang II*, 341 F.3d at 905. We further held, however, that if the district court affirmed his conviction on Count I, "his conviction and sentence on Count VI shall stand." *Id.* The motion to remand any of the other counts was denied.

On remand, the district court reasoned that, because "the indictment and the jury instructions incorporated the importation counts as predicate offenses, it is unclear which of the numerous drug related violations the jury considered as constituting the series used to arrive at their verdict" on Count I. The court therefore vacated Roy's Count I conviction, but it found that the jury's special allegation findings, regarding Roy's role as a leader of the enterprise and the amount of methamphetamine, were not affected by the vacating of the importation offenses.

The court also noted the Supreme Court's approval of the practice of federal appellate courts to "direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense." *Rutledge*, 517 U.S. at 306. The court therefore reinstated Roy's conviction on Count II, conspiracy to distribute methamphetamine, which is a lesser-included offense of CCE. Because Counts IV, VII, and VIII had been affirmed, the counts remaining for sentencing were Counts II and VI.

The court grouped Counts II and VI and found an offense level of 38, relying on the drug quantity finding made by the jury in the special allegation question for Count I. The court also added a two-level enhancement for possession of a firearm, based on Roy's convictions under Counts VII and VIII. In the alternative, the court cited testimony that established Roy's possession of firearms. The court added a four-level

adjustment for Roy's role in the offense, relying on the jury's affirmative response to the special verdict question in Count I. The court cited testimony supporting a finding that Roy suborned perjury and added a two-level adjustment for obstruction of justice.

The court discussed the requisite factors under 18 U.S.C. § 3553 and then sentenced Roy to a term of life imprisonment on Count II and 20 years on Count VI, to be served concurrently with each other, and concurrently with the sentences previously imposed on Counts IV, VII, and VIII. Roy filed a timely notice of appeal.

## STANDARDS OF REVIEW

"Whether a district court has jurisdiction is a question of law that we review de novo." *United States v. Ruiz-Alvarez*, 211 F.3d 1181, 1184 (9th Cir. 2000) (as amended).

The district court's interpretation of the sentencing guidelines is reviewed de novo, its application of the guidelines to the facts is reviewed for an abuse of discretion, and its factual findings are reviewed for clear error. *United States v. Staten*, 466 F.3d 708, 713 (9th Cir. 2006) (as amended). The overall sentence is reviewed for reasonableness. *Id.* If, however, the district court made a "material error in its Guidelines calculation that serves as the starting point for its sentencing decision," we remand for resentencing, "without reaching the question of whether the sentence as a whole is reasonable." *United States v. Kilby*, 443 F.3d 1135, 1140 (9th Cir. 2006). Whether the district court applied the correct burden of proof in determining drug quantity is reviewed de novo. *Id.* As a general rule, "district courts should resolve factual disputes at sentencing by applying the preponderance of the evidence standard." *Id.* (citations and footnote omitted).

## DISCUSSION

Roy contends that the district court did not have jurisdiction over Count II and therefore erred in reinstating his con-

viction on that count. He also contends that, even if the court
correctly reinstated the Count II conviction, it erroneously
relied on the jury findings for Count I in imposing sentence.
Roy also raises numerous other challenges to his sentence.

## I. Reinstatement of Count II

Roy contends that *Cabaccang II* expressly prohibited the
district court from reconsidering his Count II conviction for
conspiracy to distribute methamphetamine and that the district
court therefore lacked jurisdiction to reinstate the conviction.
We disagree. Roy's Count II conviction had been vacated
prior to his first appeal. Count II accordingly was never
before this court in his prior appeal; consequently, it could not
have been addressed in the remand order.

The clarification order does state that "[w]e DENY appel-
lants' motion to remand the remaining counts, including
Count II, to the district court." *Cabaccang II*, 341 F.3d at 905.
The clarification order, however, must be read in light of the
motion for clarification and the situation presented to the
court. Roy's Count II conviction had been vacated, so it was
never at issue in the prior appeal. Thus, the motion for clarifi-
cation sought remand of Count II only as to Richard's and
James' sentences. The clarification order therefore clearly was
referring only to Richard's and James' Count II convictions.
Roy's Count II simply was not before and was not addressed
by the en banc court. *See United States v. Garcia-Beltran*, 443
F.3d 1126, 1131 (9th Cir.) (where the "remand order was lim-
ited to the question of suppression of an initial set of finger-
prints," we stated that "the remand order simply did not
consider whether a new set of fingerprints could later be com-
pelled to identify the defendant after indictment," and there-
fore affirmed the grant of a motion to compel a new set of
fingerprints), *cert. denied*, 127 S. Ct. 319 (2006).

Roy points out that the government "vigorously argued
against remanding Count II." The motion for clarification

sought remand on Richard's and James' Count II convictions
on the basis that importation was alleged as part of the con-
spiracy to distribute. The government did oppose remand of
Count II on that basis. However, in discussing the contention
that Roy's Count VI conviction should be remanded, the gov-
ernment argued that, if Roy's CCE count were reversed, his
Count II conviction should be reinstated, citing *Rutledge*.

[1] Because Roy's Count II conviction had been vacated
and was not before the en banc court, the clarification order
does not preclude the district court from reconsidering that
conviction. *See Garcia-Beltran*, 443 F.3d at 1129 (stating that
the lower court is bound only as to issues addressed by the
appellate court). The next question is whether the district
court correctly reinstated the Count II conviction after vacat-
ing Roy's Count I conviction for CCE.

We have not addressed this precise issue, but a related
question was posed in *United States v. Jose*, 425 F.3d 1237
(9th Cir. 2005), *cert. denied*, 126 S. Ct. 1664 (2006): whether
"the reversal of a conviction on a greater offense, coupled
with a final conviction on a lesser included offense, pre-
clude[s] retrial of the greater offense when the offenses were
charged in the same indictment and tried together in the same
original trial." *Id.* at 1239. We held in *Jose* that retrial under
these facts did not violate the Double Jeopardy clause. *Id.* at
1239-45.

[2] As relevant to the instant case, *Jose* reasoned that, when
a jury convicts on both a greater and a lesser included offense,
*Rutledge* requires the district court to enter a final judgment
of conviction on the greater offense and vacate the conviction
on the lesser offense, which is what the district court did here
at Roy's original sentencing. *See id.* at 1247. "However, if the
greater offense is later reversed on appeal, the appellate court
should reinstate the previously vacated convictions on the
lesser-included offenses."[4] *Id.* (citing *Rutledge*, 517 U.S. at
306).

---

[4]*Jose* noted that we previously "shied away from this approach" in
*United States v. Medina*, 940 F.2d 1247 (9th Cir. 1991). *Jose*, 425 F.3d

Under the reasoning of *Jose*, the district court correctly reinstated Roy's previously vacated conviction on the lesser included conspiracy offense. The Fourth and Seventh Circuits have affirmed when confronted with facts similar to those presented here, and we agree that this is the correct outcome.

[3] In *United States v. Silvers*, 90 F.3d 95 (4th Cir. 1996), after a jury convicted Silvers on numerous counts, including CCE and conspiracy to distribute cocaine, the district court vacated the conspiracy conviction because it was a lesser included offense of the CCE conviction. Silvers later filed a habeas petition contending that his CCE conviction should be vacated because it was obtained through perjured testimony. The district court agreed and ordered a new trial on the CCE conviction, but, "because Silvers' previously-vacated conspiracy conviction no longer merged into a CCE conviction, the court *sua sponte* reinstated Silvers' conspiracy conviction." *Id.* at 97. The Fourth Circuit held that the district court correctly reinstated the previously-vacated conspiracy conviction, citing "the Supreme Court's express ratification of the district court's action" in *Rutledge*. *Id.* at 101. After the Supreme Court remanded *Rutledge* to the Seventh Circuit, that court also held that the district court had authority to reinstate the conspiracy conviction, noting that the Supreme Court had specifically validated this practice. *Rutledge v. United States*, 230 F.3d 1041, 1047-49 (7th Cir. 2000); *see also United States v. West*, 201 F.3d 1312, 1312 (11th Cir. 2000)

---

at 1247 n.6. In *Medina*, we vacated the defendant's conspiracy convictions because they were lesser-included offenses of his CCE conviction. *Medina* opined that "district courts faced with convictions on both CCE and lesser-included conspiracy counts are put in a bind," because, "[i]f the district court itself vacates the conspiracy convictions, . . . and the court of appeals subsequently reverses the CCE conviction, the courts would be powerless to reinstate the potentially valid lesser-included counts of conviction." *Medina*, 940 F.2d at 1253. *Jose* recognized, however, that *Medina* had been overruled to the extent that *Rutledge* endorsed this very practice. *Jose*, 425 F.3d at 1247 n.6.

(per curiam) (vacating a CCE conviction and remanding for the district court to reinstate a previously-vacated conspiracy conviction that had been vacated only because it was a lesser-included offense of the CCE conviction); *United States v. Ward*, 37 F.3d 243, 251 (6th Cir. 1994) (stating that the defendant conceded that his drug conspiracy conviction should be reinstated if his CCE conviction were reversed, and therefore remanding for resentencing after reversing the CCE conviction).

**[4]** We conclude that the district court correctly reinstated Roy's previously-vacated conspiracy conviction after vacating his CCE conviction on grounds that did not affect the lesser-included conspiracy conviction.

## II.   Reliance on Count I Findings for Count II Sentence

Roy contends that, even if the district court did not err in reinstating his Count II conviction, the court erroneously relied on jury findings relating to Count I in imposing his Count II sentence. The government asserts that Roy has waived the issue by failing to raise it before the district court and by conceding the drug quantity in his prior appeal.

Roy essentially concedes that he did not raise this issue below, stating in his reply brief that he did not address Count II because he thought it was not before the district court. He contends, however, that he raised the issue by arguing that Count I should be vacated and that Count II was not before the court. Contrary to his contention, this does not support a finding that he questioned the district court's drug quantity finding.

At Roy's resentencing, the government argued that the Cabaccangs had not contested the drug quantity at trial, and that the sole issue during the trial was whether they were involved in the conspiracy. The government also argued that, if the court vacated Roy's CCE conviction, the Count II con-

viction should be reinstated, and that there was a special finding of more than 3,000 grams of methamphetamine. Defense counsel responded that Count II was not at issue and that Count I should be vacated, but he did not challenge the drug quantity finding. Our review accordingly is for plain error. Fed. R. Crim. P. 52(b); *see, e.g., United States v. Evans-Martinez*, 448 F.3d 1163, 1166 (9th Cir. 2006) (reviewing for plain error a claim that the defendant failed to raise at sentencing). Plain error is error that is plain and that affects substantial rights. *Id.* If these conditions are met, we may exercise discretion to grant relief only if the error " 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* (quoting *United States v. Ameline*, 409 F.3d 1073, 1078 (9th Cir. 2005) (en banc)).

[5] When the jury found Roy guilty of Count I, CCE, the jury also found that "the violations referred to in Count I involved at least 3,000 grams of methamphetamine, or at least 30,000 grams of a mixture or substance containing a detectable amount of methamphetamine." Count II was alleged in the indictment to be one of the violations constituting the CCE. The jury verdict form therefore provides on its face that the drug quantity finding in Count I applies to each of the other counts.

[6] We agree with the careful reasoning of the district court in concluding that the special allegation findings were not tainted by the importation offenses. At the May 6, 2005, resentencing, the court reasoned as follows:

> First, the time frame alleged in Counts 2 and 6 are [sic] the same as or contained within the same time frame as to Count One, the CCE.

> Second, Counts 2 and 6 were explicitly listed as part of the series of drug related offenses to be considered by the jury.

Third, even if the jury utilized only the importation counts as being involved in the series, the only defect with the importation was the definition of importation. Absent that element, the jury still found the remaining elements to be true, that the defendant conspired to transport, attempted to transport, or transported methamphetamine from California to Guam.

The district court further reasoned that the special allegations were found by the jury beyond a reasonable doubt and therefore relied on the special allegation finding for Count I in determining the drug quantity.

[7] Roy argues that the overlapping time frame of Counts I and II is irrelevant because it is not clear which offenses the jury relied on in the CCE count. While this is true, this fact serves as the reason that the district court vacated the CCE conviction; it does not support Roy's contention that the district court erred in relying on the Count I drug quantity finding for the Count II sentence. It still remains true that the time frame alleged in the indictment for Counts I and II was the same. Although it is possible that the jury may have relied on three importation offenses in its CCE finding, the jury convicted Roy on Count II also. Moreover, as the district court reasoned, the problem with the importation offenses was the legal definition of importation. The jury's drug quantity finding with respect to any importation-related offenses still was made beyond a reasonable doubt. *Cf. Bequette*, 309 F.3d at 451 ("find[ing] no reason to disturb either the jury's special verdict or the district court's reliance on it" where the defendant did not contest the reliability of the drug quantity finding in the special verdict). Whether or not the drugs were "imported" in the legal sense does not affect the jury's finding that Roy's conduct — all of which came within the scope of the conspiracy charge — involved at least 3,000 grams of methamphetamine.

## III. Count II Enhancements

Roy contends that the district court erred in enhancing his Count II sentence for possession of a firearm, his role in the offense, and obstruction of justice.

### A. Possession of a firearm

The district court found that Roy possessed at least one firearm during the conspiracy and therefore added two levels for possession of a firearm. *See* U.S.S.G. § 2D1.1(b)(1) (1995) (adding a two-level increase in offense level if "a dangerous weapon (including a firearm) was possessed" during a drug offense). The court relied for its finding on Roy's convictions in Counts VII and VIII for possession of a firearm. In the alternative, the court found that the enhancement was supported by the testimony of two witnesses, Joseph Kinder and Doris Cruz, who testified that Cabaccang possessed a firearm. Roy contends that an enhancement for possession of a firearm constitutes impermissible double counting because he already had been sentenced to 120 months on Counts VII and VIII for possession of the same firearm.

[8] "Impermissible double counting 'occurs where one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by the application of another part of the Guidelines.' " *United States v. Speelman*, 431 F.3d 1226, 1233 (9th Cir. 2005) (quoting *United States v. Reese*, 2 F.3d 870, 895 (9th Cir.1993)). There is, however, "nothing wrong with 'double counting' when it is necessary to make the defendant's sentence reflect the full extent of the wrongfulness of his conduct." *Reese*, 2 F.3d at 895.

[9] We reject Roy's double counting argument. The alternative ground on which the district court relied to apply the firearm enhancement was the testimony of two witnesses involving a different weapon from those on which Roy's fire-

arm convictions were based. Roy's § 922(g) convictions were
for the possession of two different .22 LR caliber revolvers.
The testimony relied upon by the district court to support its
finding that the firearm enhancement applied involved a .357
Magnum. The offense level increase for Roy's sentence on
Count II accordingly was based on different conduct from the
conduct on which his sentence for Counts VII and VIII was
based. The application of the enhancement for firearm posses-
sion did not constitute impermissible double counting.

## B.  Organizer/Leader

The district court added a four-level increase in offense
level for Roy's role in the offense pursuant to U.S.S.G.
§ 3B1.1, relying on the jury's special finding in Count I. The
special allegation concerning Roy's role in the offense
required the jury to find that Roy "was the principal adminis-
trator, organizer or leader of the enterprise or was one of sev-
eral such principal administrators, organizers or leaders." Our
review, again, is for plain error.

Roy contends that the jury finding that he was an organizer
or leader concerned Count I and that no finding was made
with respect to Count II. Roy does not cite any precedent to
support his contention that the district court erred in relying
on the special verdict finding in imposing the offense level
increase.

[10] Roy also contends that the special finding by the jury
"never mentioned five or more persons, or extensiveness."
While it is true that the special allegation did not mention five
or more persons, the jury instructions did. In order to convict
Roy of Count I, the jury was instructed that it had to find that
Roy "committed the offenses together with five or more other
persons," and that they "must also unanimously agree on
which five or more persons committed the offenses together
with the defendant and with respect to whom the defendant
acted as organizer, supervisor, or manager." The district court

did not err in enhancing Roy's sentence for his role in the offense.

## C. Obstruction of justice

The district court imposed a two-level increase in offense level for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. The court based its finding that Roy had obstructed justice on its review of the trial transcripts. The court cited the testimony of eight witnesses who testified that Roy had instructed them to lie if they were questioned by police regarding the money they were laundering. The court also cited the testimony of Franklin Alcantara, who testified that he was confronted by Roy and three of Roy's friends and instructed by Roy to lie about the source of drug proceeds.

Roy contends that the district court relied on the incorrect section of the guidelines in imposing this enhancement, and he briefly states that there was no jury finding on this issue. Although the district court cited U.S.S.G. § 2D1.5, which concerns a CCE conviction, when the court initially discussed the obstruction of justice enhancement, this mistake is immaterial. The citation of the incorrect section did not affect the court's findings regarding obstruction of justice or its calculation of the sentence.

[11] The 1995 version of the guidelines, which is the version applied to this case, provided for a two-level increase in offense level "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. The application notes indicate that "committing, suborning, or attempting to suborn perjury," is an example of the type of conduct to which the enhancement applied. U.S.S.G. § 3C1.1, cmt. n.3(b). Roy does not challenge the testimony on which the district court relied in making its finding that Roy suborned perjury. He merely states that the court erred in relying

on "[t]he transfer from Count I." The court did not, however, rely on the jury's finding from Count I in imposing the enhancement for obstruction of justice. Rather, the court specifically cited the testimony of numerous witnesses to support its finding that Roy suborned perjury. The offense level increase for obstruction of justice was not erroneous.

## IV.  Count VI Sentence

Roy contends that the district court did not adequately explain the reasons for the sentence imposed on Count VI, as required by 18 U.S.C. § 3553(c). He also contends that the district court did not adequately explain how it determined that the offense level should be 46 for this count.

"All counts involving substantially the same harm shall be grouped together into a single Group." U.S.S.G. § 3D1.2. Counts are grouped together "[w]hen the offense level is determined largely on the basis of . . . the quantity of a substance involved." U.S.S.G. § 3D1.2(d). Count II, conspiracy to distribute methamphetamine, and Count VI, possession with intent to distribute methamphetamine, accordingly were grouped together in Group One. The court concluded that Count II involved at least three kilograms of methamphetamine (which included the 21.19 grams separately alleged in Count VI), resulting in a base offense level of 38, pursuant to U.S.S.G. § 2D1.1(a)(3).[5] The court then added two levels for the firearm possession, four levels for role in the offense, and two levels for obstruction of justice, resulting in an offense level of 46. The offense level for Group Two, the money laundering conviction for Count IV, was 34. The offense level for Group Three, the felon in possession convictions for Counts VII and VIII, was 28. The total offense level, accord-

---

[5]Under the Drug Quantity Table found in U.S.S.G. § 2D1.1, 30 kilograms of a mixture or substance containing a detectable amount of methamphetamine, or 3 kilograms or more of methamphetamine (actual) has a base offense level of 38.

ingly was 46, pursuant to U.S.S.G. § 3D1.4.[6] The district court adequately explained its reasons for the offense level of 46.

Moreover, despite Roy's contention to the contrary, the district court thoroughly discussed the requisite factors under 18 U.S.C. § 3553 in imposing Roy's sentence. The court first expressed its awareness that the guidelines are advisory. It then discussed its considerations of the § 3553 factors. For example, the court stated that Roy was responsible for bringing "a substantial amount of methamphetamine onto this island," and had been engaged in that activity for six to ten years. The court also stated that Roy had "manipulated and exploited numerous people in the community, and members of his own family, all for his own personal gain." The court described the "complex and far-reaching" nature of the drug ring, the money involved, and the manner in which the conspiracy was carried out. The court further stated that Roy had "been obstructing justice continually, carrying and supplying firearms and laundering a substantial amount of money." The court then discussed the effects of Roy's conduct on the community and his family.

The court discussed Roy's conduct in prison, his prior convictions and other offenses, the seriousness of the offense, and the need for deterrence. The court also considered the need to protect the public, Roy's continued choices to disobey the law and his failure to acknowledge wrongdoing, as well as the ways Roy could benefit from education or vocational training, medical care, and other treatment in prison. Finally, the court considered the kinds of sentences available and the range of

---

[6]Section 3D1.4 provides that "[t]he combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated." U.S.S.G. § 3D1.4. As the district court stated, the total number of units was one, so no more increases in offense level were warranted. U.S.S.G. § 3D1.4.

punishment. The court's discussion of the § 3553 factors was extensive, thoughtful, and thorough.

[12] Roy briefly asserts that the sentence was not reasonable. The district court did not misconstrue or misinterpret the guidelines. *See United States v. Mix*, 457 F.3d 906, 911 (9th Cir. 2006) (discussing this court's review of sentences). Nor did the court abuse its discretion in applying the guidelines to the facts of the case or make any clear error in its factual findings. *See id.* Furthermore, the court engaged in a very thorough and thoughtful consideration of the § 3553 factors. For all these reasons, we find that the sentence imposed by the district court is reasonable. *See United States v. Nichols*, 464 F.3d 1117, 1126 (9th Cir. 2006) (concluding that the sentence was reasonable where "[t]he district court's approach was reasoned and addressed factors specified in § 3553(a)," and the defendant had not shown that the district court "overlooked any significant factor, gave improper weight to any factor or otherwise imposed an unreasonable sentence").

The sentence imposed by the district court is affirmed.[7]

**AFFIRMED.**

---

[7]Roy briefly challenges the sentences imposed on Counts IV, VII, and VIII. These counts, however, were not before the district court on remand because *Cabaccang I* affirmed the sentences on the convictions that were not importation-related, and *Cabaccang II* remanded only Count VI. Moreover, the arguments Roy raises were not raised in his prior appeal and were not raised in the district court. We have examined Roy's arguments and conclude that any error, if there was error, did not affect his substantial rights.



JUN 2 6 2007

DISTRICT COURT OF GUAM
HAGATNA, GUAM

---

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.