1
2
3
4
5
6
7
8

DISTRICT COURT OF GUAM

9

10   UNITED STATES OF AMERICA,

11            Plaintiff,

12      vs.

13   JAMES T. CABACCANG,

14            Defendant.

15

Criminal Case No. 97-00095
Civil Case No. 08-00017

**OPINION AND ORDER RE: MOTION UNDER
28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR
CORRECT SENTENCE AND ORDER RE:
CERTIFICATE OF APPEALABILITY**

16      Before the court is Petitioner James T. Cabaccang's 28 U.S.C. § 2255 Motion to Vacate,

17   Set Aside, or Correct Sentence.[1]  *See* Docket No. 516.  He is proceeding *pro se* in this case.  *See*

18

19      [1]  The Petitioner has requested an evidentiary hearing on his motion.  Under 28 U.S.C. §

20   2255, an evidentiary hearing shall be held "[u]nless the motion and the files and record of the case
     conclusively show that the prisoner is entitled to no relief."  As stated in *United States v. Hearst*, 638

21   F.2d 1190 (9th Cir. 1980):

22      The standard is essentially whether the movant has "stated a claim on which relief

23      could be granted," *Moore v. United States*, 571 F.2d 179, 184 (3rd Cir. 1978) – or,
        where affidavits have been submitted, whether summary judgment for the

24      government is proper. *See also* Fed.R.Civ.P. 12(b), 56. . . .

25      The Ninth Circuit's rule is that "merely conclusory statements in a §2255 motion

26      are not enough to require a hearing."  *Wagner v. United States*, 418 F.2d 618, 621
        (9th Cir. 1969).

27

*Hearst*, 638 F.2d at 1194.  The Ninth Circuit described the standard as follows: "Where a prisoner's

Docket No. 516. After reviewing the parties' submissions, as well as relevant caselaw and authority, the court **HEREBY DENIES** the motion and enters a final order adverse to the Petitioner, and **DENIES** a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

## I. PROCEDURAL AND FACTUAL BACKGROUND

The Petitioner James Toves Cabaccang ("the Petitioner"), with his brothers Roy Toves Cabaccang ("Roy") and Richard Toves Cabaccang ("Richard"), were indicted on May 9, 1997 in the District Court of Guam on numerous charges relating to a drug trafficking ring that involved the transport of methamphetamine from California to Guam in the early and mid-1990s.[2] After a lengthy jury trial, the three brothers were convicted of all the charges against them. The Petitioner was sentenced to life imprisonment for Counts II and III, and 240 months for Count IV. Thereafter, the Petitioner and his brothers appealed their convictions. They raised numerous grounds for reversal, including *inter alia*, the argument that the transport of drugs from California to Guam did not constitute importation, insufficiency of evidence, ineffective assistance of counsel, and erroneous jury instructions. A three-judge panel affirmed the convictions in an unpublished decision. *See United States v. Cabaccang*, 16 Fed. Appx. 566,

---

motion presents no more than conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is not required." *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986) (citing *Farrow v. United States*, 580 F.2d 1339, 1360-61 (9th Cir. 1978) (en banc)).

Based on the analysis herein, the Petitioner's motion is "no more than conclusory allegations, unsupported by facts and refuted by the record." *Quan*, 789 F.2d at 715. Accordingly, his request for an evidentiary hearing is denied.

[2] In a twelve-count Amended Indictment, Roy was charged with Continuing Criminal Enterprise (Count I), Conspiracy to Distribute Methamphetamine (Count II), Conspiracy to Import Methamphetamine (Count III), Conspiracy to Launder Money Instruments (Count IV), Importation of Methamphetamine (Count V), Possession of Methamphetamine with Intent to Distribute (Count VI), Possession and Receipt of a Firearm by a Felon (Counts VII, VIII and IX), and Attempted Importation of Methamphetamine (Counts X, XI, and XII). Richard was charged with Conspiracy to Distribute Methamphetamine (Count II), Conspiracy to Import Methamphetamine (Count III), Conspiracy to Launder Money Instruments (Count IV), and Importation of Methamphetamine (Count V). James was charged with Conspiracy to Distribute Methamphetamine (Count II), Conspiracy to Import Methamphetamine (Count III), and Conspiracy to Launder Money Instruments (Count IV).

1  568, 2001 WL 760553 (9th Cir. 2001).  The panel later issued a supplemental unpublished

2  opinion, addressing the Petitioner's and his brothers' challenges to their convictions based on

3  *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and again affirming the convictions.  *See United*

4  *States v. Cabaccang*, 36 Fed. Appx. 234, 2002 WL1192886 (9th Cir. 2002).

5          The Petitioner and his brothers then sought a rehearing, which was granted by the Ninth

6  Circuit in *United States v. Cabaccang*, 332 F.3d 622 (9th Cir. 2003) (*Cabaccang I*).  In

7  *Cabaccang I*, the Ninth Circuit examined the argument of whether the transport of drugs on a

8  nonstop flight from one location in the United States (California) to another (Guam) constituted

9  importation within the meaning of 21 U.S.C. § 952(a), when the drugs had traveled through

10  international airspace en route to Guam.  *Id.* at 624.  The Ninth Circuit agreed with the

11  Petitioner's argument, stating that its "holding addresses those cases in which the undisputed

12  evidence shows that the nonstop flight on which the defendant transported drugs departed and

13  landed in the United States." *Id.* at 635.  The Ninth Circuit reversed the importation related-

14  convictions, which as to the Petitioner, was Counts III (Conspiracy to Import Methamphetamine

15  ). *See id.* at 637. The court remanded the case only as to Roy.  *Id.* at 635.  The Ninth Circuit

16  further held:  "As to the Cabaccangs' challenges to their convictions and sentences on the counts

17  that are not importation-related, we adopt the panel decisions as our own and therefore affirm the

18  judgment of the district court as to those counts." *Id.* at 637

19          The Petitioner and Richard then requested clarification as to their  convictions and

20  sentences of Conspiracy to Distribute Methamphetamine (Count II), and Roy sought clarification

21  of the Ninth Circuit's remand as to his conviction and sentence of Possession of

22  Methamphetamine with Intent to Distribute (Count VI).  In ruling on the request for clarification,

23  the Ninth Circuit denied remand of Count II as to the Petitioner and Richard, and granted remand

24  of Count VI as to Roy.  *See United States v. Cabaccang*, 341 F.3d 905 (9th Cir. 2003)

25  (*Cabaccang II*).

26          On remand, the court concluded that it lacked jurisdiction to resentence the Petitioner or

27  Richard, stating:

Resentencing of James and Richard Cabaccang by this court would be directly contrary to the mandate of the Ninth Circuit which stated that, quote:

> Notwithstanding our reversal of their imporation related convictions, each of the Cabaccang brothers will still serve a life sentence for his involvement in the methamphetamine ring. Cabaccang, 332 F.3d, specifically at page 636.

Transcript of Resentencing, May 6, 2005, pp. 7-8. The court then ordered the amendment of the judgment of the Petitioner "to reflect only convictions on Counts Two and Four" and committed the Petitioner "to continue to serve the sentence imposed by Judge Unpingco of life on Count Two, and 240 months concurrent on Count Four." Transcript of Resentencing, May 6, 2005, p. 14. The Petitioner again appealed, and the Ninth Circuit affirmed on March 30, 2007. *See United States v. Cabaccang*, 226 Fed. Appx. 750, 2007 WL 1031376 (9th Cir. March 30, 2007). The Petitioner sought certiorari from the United States Supreme Court on August 24, 2007. *See* Docket No. 523, Exh. 7. The Court denied his petition on October 9, 2007. *See id.*

The Petitioner timely filed the instant § 2255 motion in this court on October 7, 2008.[3] *See* Docket No. 516. The Government filed its response to the motion on February 3, 2009. *See* Docket No. 523. Subsequently, the Petitioner filed his memoranda of law and authorities in support of his motion on April 2, 2009. *See* Docket No. 526.

**II. DISCUSSION**

In his § 2255 motion, the Petitioner challenges the representation by his trial counsel, resentencing counsel, and appellate counsel. The court addresses the following claims of

---

[3] The court notes that the Petitioner requested extensions of time to file his § 2255 motion, as the correctional facility was placed in "lockdown" from June 20, 2008 to September 7, 2008 due to an "institution emergency." *See* Docket Nos. 508 and 510.

An extension of time however, is not necessary and the court finds this motion to be moot. Because the Petitioner sought certiorari review from the United States Supreme Court, the § 2255 petition had to be filed within one year of either "the conclusion of direct review by the highest court, including the United States Supreme Court, to review the judgment" or "the expiration of the time to seek such review." *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001); *see also United States v. Garcia*, 210 F.3d 1058 (9th Cir. 2000). The United States Supreme Court denied the Petitioner's petition for certiorari on October 9, 2007. His § 2255 motion needed to be filed within one year of this date. The record reveals that the Petitioner filed his motion on October 7, 2008; therefore, it is timely filed.

ineffective assistance of counsel:

1.     Whether trial counsel's failure to challenge the amount of drugs established ineffective assistance of counsel

2.     Whether trial counsel's failure to object to the distribution charge was ineffective assistance of counsel

3.     Whether trial counsel's failure to request a change of venue amounts to ineffective assistance of counsel

4.     Whether trial and appellate counsels' failure to argue that the original sentence was unconstitutional proved to be ineffective assistance of counsel

5.     Whether resentencing counsel's failure to argue that the *Booker* decision should have applied to his case constituted ineffective assistance of counsel

6.     Whether trial counsel's failure to argue that he had been erroneously sentenced on the money laundering count was ineffective assistance of counsel

7.     Whether the District Court erred in not inquiring whether jurors were actually exposed to newspaper articles that were highly prejudicial to the Petitioner's right to an impartial trial

8.     Whether trial counsel's failure to explore the possibility of a plea agreement established ineffective assistance of counsel

9.     Whether trial counsel's acceptance of the Government's allegation of facts and failure to investigate alternative defenses amounts to ineffective assistance of counsel

10.     Whether trial counsel's failure to request a mistrial after certain media reports constitutes ineffective assistance of counsel

11.     Whether trial counsel's failure to request jury sequestration amounts to ineffective assistance of counsel[4]

*See* Docket No. 516.

In its response, the Government requests the court dismiss each of the grounds, and its precise arguments are set forth in the discussion below. *See* Docket No. 523.

## A. The law on ineffective assistance of counsel

The Petitioner argues that the performance of his counsel during the trial, resentencing, and first and second appeal were so ineffective that, in essence, he was denied his constitutional

---

[4]   This ground is addressed only in the Petitioner's memo. He did not raise this issue in his initial motion.

right to counsel. The law regarding ineffective assistance of counsel is well settled. A two-prong test has been articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), which states that to establish a claim of ineffective assistance of counsel, a petitioner must show both deficient performance by counsel (the "incompetence prong"), and that such deficient performance prejudiced his defense (the "prejudice prong"). *Id.* at 687.

To demonstrate deficient performance by his counsel, or the incompetence prong, the Petitioner must show his counsel's performance was "outside the wide range of professional competent assistance." *Id.* at 690. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* He must show that his counsel's performance failed to meet an objective standard of reasonableness. *Id.* at 689.

Under the prejudice prong, the Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. That is, he must demonstrate "that counsel's errors were so serious as to deprive [him] of a fair trial." *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

To succeed on a claim of ineffective assistance of counsel, a petitioner must satisfy both prongs of the *Strickland* test. *See id.* at 700. However, the court's analysis of an ineffective assistance of counsel claim does not require the mechanical application of the standards articulated in *Strickland*. *Id.* at 696. The *Strickland* Court explained:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697. Furthermore, in evaluating a claim of ineffective assistance of counsel, the court

"should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. As stated by the Ninth Circuit, "we 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Jones v. Ryan*, 583 F.3d 626, 636-37 (9th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689 (citation and quotation marks omitted)). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

Thus, the court examines the merits of each of the Petitioner's claims of ineffective assistance of counsel to determine whether he has made a showing of deficient performance and prejudice, and whether he has overcome the "strong presumption" that counsel has provided him with "adequate assistance."

### 1. Whether trial counsel's failure to challenge the amount of drugs established ineffective assistance of counsel[5]

The court first examines the Petitioner's allegations that his trial counsel was ineffective in failing to challenge or object to the drug quantity alleged by the Government and the Government witnesses. The Government contends that the Ninth Circuit addressed and disposed of this issue in *Cabaccang*, 36 Fed. Appx. 234, where that court found that there was plain error, but such error did not affect the outcome of the proceedings.

The *Strickland* Court has instructed that a court evaluating a claim of ineffective assistance of counsel need not "address both components of the inquiry if the defendant makes an insufficient showing on one." A court may examine the prejudice prong first, and "[i]f is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which

---

[5] This issue is addressed in the Petitioner's motion, and is briefed in memo as Ground I.

1  we expect will often be so, that course should be followed." 488 U.S. at 697. This course is

2  followed here.

3      In *Cabaccang*, 36 Fed. Appx. 234, the Ninth Circuit addressed the Petitioner's claim of

4  error under *Apprendi* on the basis that the issue of drug quantity had not been submitted to the

5  jury. *Id.* Because the Petitioner did not object at trial, the Ninth Circuit thus applied the plain

6  error standard, which requires determining if there was error, if such error was plain, and if it

7  seriously affected the fairness of the proceeding. *Id.* The court conceded that "[t]here can be no

8  doubt that there was error in this case and that it was plain." *Id.* at 235. Despite this error, the

9  court found that the Petitioner's "case founders because, for example, there is no contest that the

10  amounts in the packages that James was convicted of sending amounted to far more than 50

11  grams of methamphetamine, and that placed him in the 10 years to life statutory range." *Id.* at

12  235. Ninth Circuit concluded: "Thus, 'it appears beyond all doubt that the *Apprendi* error in this

13  case did not affect the outcome of the proceeding . . . .'" *Id.* (quoting *United States v. Buckland*,

14  289 F.3d 558, 1184 (9th Cir. 2002). This holding makes clear the Ninth Circuit finding that the

15  Petitioner did not suffer prejudice.

16      The Ninth Circuit's subsequent grant of rehearing in *Cabaccang I*, 332 F.3d 622, only

17  reversed the Petitioner's importation-related convictions, and further stated: "As to the

18  Cabaccangs' challenges to their convictions and sentences on the counts that are not importation-

19  related, we adopt the panel decisions as our own and therefore affirm the judgment of the district

20  court on those counts." *Id.* at 637. Thus, the Ninth Circuit's ruling in *Cabaccang I* which

21  adopted the previous finding of no prejudice, defeats the Petitioner's claim of ineffective

22  assistance of counsel.

23      **2. Whether trial counsel's failure to object to the distribution charge was**

24  **ineffective assistance of counsel**[6]

25      Petitioner next argues trial counsel was ineffective when he did not object to the

26  _____

27      [6]  This ground is addressed only in the Petitioner's motion. He did not discuss this issue in
his subsequent memorandum.

distribution charge because of a lack of evidence.  He contends that distribution was never proven and no witnesses testified that he was involved in the distribution of the alleged drugs. The Government contends that there was evidence in the record to contradicting this claim.

The most significant evidence against the Petitioner was the testimony of Government witness Katrina Cabaccang ("Katrina"), Roy's estranged wife.  According to Katrina, her involvement in the drug trafficking ring began in the spring of 1995, when Roy asked her to start sending "pounds back there" in reference to Guam.  Trial Transcript, Volume II, p. 304.  Roy told Katrina "how he wanted the meth packaged in baggies and how many baggies before [she] put peanut butter, and how to tape each bag, and how to put it in the box with carbon paper, and he gave [her] the address to send it to."  Trial Transcript, Volume II, p. 305.  Katrina testified that the money to buy the methamphetamine was sent through Western Union to different people, including the Petitioner.  *See id.* p. 306.  She testified that she "would give the money to James or Richard and they would get it."  *See id.* p. 307.  In the summer of 1995, Katrina indicated that Roy had "cut Richard off" and had "recruited" her and the Petitioner to begin packaging the drugs.  Trial Transcript, Volume II, p. 340.

Katrina estimated that in 1995, she had given the Petitioner between "$20,000 and $50,000, maybe more."  *Id.* p. 309.  On one occasion, she accompanied the Petitioner to Long Beach to purchase methamphetamine from "Tony," and they obtained a sample.  *See id.* at 309-10.  They later received "about a pound" of the drug from Tony.  *See id.*  Katrina further testified that in 1995, she and the Petitioner had packaged between six to nine parcels of methamphetamine, and they would buy supplies they needed.  *See id.* pp. 315-17.  She said the Petitioner told her to use carbon paper "to conceal what was in the package" when it went "though the Xray machine" at the post office.  Trial Transcript, Volume XX, pp. 3649-50.  The packaging would take place at her house or the Petitioner's home, and that they had a "Triple Beam scale that was kept in James's closet" to weigh the methamphetamine before sending it. *See id.* p. 315-18.  Either she or the Petitioner would then mail out the parcels.  *See id.* at 315-20.

Government witness James Melton ("Melton"), testified that he had purchased

1  methamphetamine from the Petitioner, personally for his use and  with other employees who had

2  "pool[ed] their money together." Docket No. 411, Trial Transcript, Volume X, pp. 1739-40.  He

3  also testified that in February 1995, he agreed to pick up money that Roy wanted to send to

4  California using Western Union. *See id.* pp. 1741-45.  On February 13, 1995, Melton and the

5  Petitioner went to a Western Union office, and Melton picked up nine checks for $1,000.00 each.

6  *See id.* p. 1746.  They went to various locations but were unsuccessful in their attempts to cash

7  the checks, until Melton was able to cash six checks. *See id.* p. 1747.  Melton then testified:

8  "When we got into my vehicle, I handed it to James Cabaccang." *Id.*, p. 1747.  Melton was able

9  to cash the last three checks at his bank, and upon obtaining the $3,000 in cash, he testified:  "I

10  handed it over the James Cabaccang once we were in my vehicle." *Id.* p. 1750.

11        In addition, the Petitioner told Melton about packaging parcels of methamphetamine. *See*

12  Docket No. 411, Trial Transcript, Volume X, p. 1754-55.  These conversations took place in

13  1996 and 1997, "[u]sually either at work or at [Melton's] house." *Id.* at 1754.  Melton testified

14  that the Petitioner would "say had it's a lot of work involved in packaging" methamphetamine,

15  that "you'd have to wrap it up in peanut butter, and use carbon paper in order to avoid

16  detection." *See* Docket No. 411, Trial Transcript, Volume X, p. 1755.  The Petitioner would

17  package at his home, and that "he had to do it at night when his family was either not there or

18  asleep." *See id.*  The Petitioner also told Melton "of an incident where a package supposedly

19  was signed but they could not find the person who received it." Docket No. 411, Trial

20  Transcript, Volume X, p. 1756.  Melton also testified that the Petitioner said his wife wanted him

21  to "quit using" methamphetamine and "quit being involved in this." *See id.* p. 1758.  The

22  Petitioner never told Melton how much methamphetamine he had sent to Guam, but the

23  Petitioner admitted that "he couldn't send the whole quantity all at once for fear of being taken

24  or caught, so [the Petitioner] started sending smaller quantities to avoid detection, or losing the

25  product." Docket No. 411, Trial Transcript, Volume X, pp. 1758-59.

26        The testimony of these witnesses directly contradicts the Petitioner's argument that there

27  was no evidence to support the distribution count. Therefore, his trial counsel was not deficient

1   in failing to argue that there was a lack of evidence, because such an argument would be

2   meritless.  As noted, it is not ineffective assistance of counsel if an attorney fails to raise a

3   meritless argument.  *See Bauman*, 692 F.2d at 572.  Accordingly, the court concludes there was

4   not ineffective assistance of counsel in this regard.

5   **3.  Whether trial counsel's failure to request a change of venue amounts to**

6   **ineffective assistance of counsel**[7]

7   The Petitioner contends that it was error for trial counsel to fail to request a change of

8   venue based on the media coverage of the case, because it was impossible to seat an impartial

9   jury and the jury was biased against him.  The Government argues that the Petitioner has not met

10  his burden of proving that a change of venue was justified, and requests that this ground for

11  relief be denied.

12  Due process requires a change of venue be granted when a trial court cannot seat an

13  impartial jury because of "prejudicial pretrial publicity or an inflamed community atmosphere."

14  *Turner v. Calderon*, 281 F.3d 851, 865 (9th Cir. 2002).  The Ninth Circuit "require[s] a

15  petitioner to show that prejudice should be presumed or that actual prejudice existed."  *Id.*

16  Further, the court has held that:  "Prejudice is presumed only in extreme instances 'when the

17  record demonstrates that the community where the trial was held was saturated with prejudicial

18  and inflammatory media publicity about the crime.'"  *Daniels v. Woodford*, 428 F.3d 1181, 1211

19  (9th Cir. 2005) (quoting *Ainswoth v. Calderon*, 138 F.3d 787, 795 (9th Cir. 1998) *as amended*

20  152 F.3d 1223).   The court articulated the following test:

> Three factors should be considered in determining presumed prejudice: (1)
> whether there was a "barrage of inflammatory publicity immediately prior to trial,
> amounting to a huge ... wave of public passion"; (2) whether the news accounts
> were primarily factual because such accounts tend to be less inflammatory than
> editorials or cartoons; and (3) whether the media accounts contained
> inflammatory or prejudicial material not admissible at trial.

*Daniels*, 428 F.3d at 1211.  The Petitioner does not show any specific facts for this court to

---

[7] This argument is discussed in the Petitioner's  motion, and in his memorandum as Ground
III.

conclude that prejudice should be presumed, yet he urges this court to apply the presumption. Applying these factors here reveals that the Petitioner cannot satisfy the test for presuming prejudice. First, nothing in the record supports a finding that there was a "barrage of inflammatory publicity" that amounted to a "huge . . . wave of public passion." *Id.* The Petitioner includes what appears to be a partial transcription of one news media report. In the Petitioner's transcription, the news reporter refers to "the drug case against Roy Toves Cabaccang" and states that Roy Cabaccang "is accused of being the mastermind." The report never names the Petitioner. Thus, the Petitioner offers only conclusory statements alleging a "firestorm" of media coverage, but makes no showing that there was a "wave of public passion." Second, this news report cited by the Petitioner is "primarily factual" as it discusses the trial schedule and security concerns raised. Third, the Petitioner has not shown media accounts containing inflammatory or prejudicial material not admissible at trial. Clearly, this is not an instance where prejudice could be presumed.

Furthermore, the Petitioner has not shown the existence of actual prejudice that influenced the jury. "To demonstrate actual prejudice, [a petitioner] must show that 'the jurors demonstrated actual partiality or hostility that could not be laid aside.'" *Daniels*, 428 F.3d at 1211 (quoting *Harris v. Pulley*, 885 F.2d 1354, 1363 (9th Cir. 1988)). The Petitioner seemingly argues that the media coverage influenced the jurors to convict him; he offers nothing as to whether the jurors showed actual partiality or hostility. Notably, the Petitioner ignores the substantial evidence against him, including the testimony of 22 informants who testified to the drug trafficking ring that led to his conviction.

The court is not persuaded by the Petitioner's argument. As discussed above, the court finds that the Petitioner has failed to demonstrate that prejudice should be presumed or that actual prejudice existed to support a request for a change in venue. Therefore, trial counsel provided adequate assistance when he did not make a motion for a change of venue, because there were no grounds to support such a request. In sum, such failure to satisfy both the incompetence prong and prejudice prong of *Strickland* defeats the ineffectiveness claim.

**4. Whether trial and appellate counsels' failure to argue that the original sentence was unconstitutional proved to be ineffective assistance of counsel**[8]

The Petitioner contends that trial counsel and appellate counsels were ineffective in failing to argue the original sentence was unconstitutional when the trial judge failed to impose the mandatory term of supervised release. The Government concedes that the court did not impose a term of supervised release, but argues that this is not grounds for invalidating the judgment as the Petitioner cannot show prejudice.

The record reveals that at the April 17, 1998 sentencing, the court imposed a term of life imprisonment on Counts II and III, and 240 months on Count IV, but did not impose supervised release. Following the remand of the case pursuant to *Cabacang I*, the judge stated that he did not have jurisdiction to resentence the Petitioner, and he ordered the amendment of the Petitioner's judgment to reflect convictions only on Count II and Count IV. He ordered that the Petitioner "continue to serve" the previously imposed life sentence on Count II. He did not impose a term of supervised release.[9]

With regard to this specific argument, the court examines only whether there was prejudice caused by the alleged error. As noted, the court in *Strickland* stated: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697. The court finds that even though his trial and appellate counsels did not object to the court's failure to impose a term of supervised release, the Petitioner was not prejudiced.

Prior to the Sentencing Reform Act of 1984, a federal prisoner was eligible for release on parole after serving ten years of a life sentence. *See* 18 U.S.C. § 4205. The Sentencing Reform

---

[8] This argument is discussed in the Petitioner's motion, and in his memorandum as Ground IV.

[9] As a practical matter, it may appear unnecessary to sentence a defendant to a term of supervised release following the imposition of a life sentence, but such has been done in other cases in this circuit. *See e.g.*, *United States v. Mitchell*, 568 F.3d 1147 (9th Cir. 2009) (district court had imposed a sentence of mandatory life term of imprisonment and ten years of supervised release).

Act, however, abolished parole in the federal system. *See* Pub. L. No. 98-473, tit. II, § 218(a)(5), 98 Stat. 1837, 2027 (1984) codified as amended at 18 U.S.C. § 3583. The parole system was replaced with a supervised release system "in which the length of [post-incarceration] supervision is dependent solely upon the defendant's need for supervision after release from jail." *United States v. Montenegro-Rojo*, 908 F.2d 425, 432 (9th Cir. 1990).

Because parole no longer exists in the federal system, the Petitioner must serve the entire life term of imprisonment imposed on Count II. The Petitioner will never be released, and thus will never have the opportunity to serve supervised release even if imposed by the court. Even though his attorneys did not raise this argument, the Petitioner cannot show that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Therefore, the court finds that he has not demonstrated prejudice. Accordingly, the court finds that there was no ineffective assistance of counsel in this regard.

**5. Whether resentencing counsel's failure to argue that the *Booker* decision should have applied to his case constituted ineffective assistance of counsel[10]**

The court next examines the Petitioner's allegations that his resentencing counsel was ineffective in failing to argue that his sentence was not final at the time of the resentencing, and that the holding in *United States v. Booker*, 543 U.S. 220 (2005) should be applied at resentencing. The Government asks the court to reject this argument, because the Petitioner has not established how he was prejudiced by *Booker*.

Review of the record reveals that the Petitioner erroneously believes his counsel at resentencing did not argue for the application of *Booker*. In fact, his counsel had apparently filed a sentencing memorandum, and had orally argued during the May 6, 2005 resentencing, that *Booker* should apply. The judge presiding at the resentencing addressed, and rejected, this argument.

---

[10] This ground is addressed only in the Petitioner's motion. He did not discuss this issue in his subsequent memorandum.

1
2
3

> [THE COURT]:    In their papers, counsel for James and Richard Cabaccang have proffered arguments that these defendants should be resentenced under the Supreme Court's recent decision in <u>United States versus Booker</u> found at 543 U.S. and 125 Supreme Court Reporter, 738, January 12, 2005.

4
5
6

> Specifically, defendants argue under <u>Apprendi</u> that there was no jury determination of the amount of drugs involved in the offense.  This argument was rejected by the three-judge Ninth Circuit panel in <u>United States versus Cabaccang</u>, 36 Fed Appendix 234, Ninth Circuit, 2002.  That rejection was specifically upheld by the *en banc* panel.

7
8
9

> <u>Booker</u> applies to cases on direct appeal as of the date of that opinion. Because in 2003 the Ninth Circuit had explicitly upheld the convictions of James and Richard Cabaccang on Count II, at Cabaccang 341 F.3d at 905, the time for direct appeal to the Supreme Court is passed.  Accordingly, unlike Roy, the cases of James and Richard Cabaccang are no longer on direct appeal and <u>Booker</u> does not apply to them. . . .

10  Transcript of Resentencing, May 6, 2005, pp. 6-7.  The court then heard argument from defense

11  counsel that *Booker* applied, as well as from the Government prosecutor stating that the Ninth

12  Circuit had not remanded the Petitioner's or his brother Richard's cases for resentencing.

13  Ultimately, the court concluded that it did not have jurisdiction to resentence, and stated:

14
15
16
17

> "Accordingly, this court orders that the judgment be amended to reflect only convictions on Counts Two and Four.  The reversal of the conviction for Counts Three has no effect on the sentence imposed for the remaining counts on which defendant was found guilty.  Defendant James Toves Cabaccang is hereby committed to the custody of the Bureau of Prisons to continue to serve the sentence imposed by Judge Unpingco of life on Count Two, and 240 months concurrent on Count Four."

18  Transcript of Resentencing, May 6, 2005, p. 14.

19  The Petitioner and Richard appealed this decision, and the Ninth Circuit affirmed,

20  holding:  "The district court accordingly did not err in concluding that it lacked jurisdiction to

21  resentence James and Richard."  *United States v. Cabaccang*, 226 Fed. App. 750, 2007

22  WL1031376 (9th Cir. March 30, 2007).

23  The Petitioner is factually incorrect in arguing that his counsel at resentencing did not

24  argue that *Booker* applied; the record shows that counsel did so.  There is no ineffective

25  assistance of counsel in this respect.

26  ///

27  ///

1    **6.  Whether trial counsel's failure to argue that he had been erroneously sentenced**

2    **on the money laundering count was ineffective assistance of counsel[11]**

3         The Petitioner next argues that his trial counsel's performance was deficient in failing to

4    challenge the sentence of 240 months on Count IV, because the Sentencing Guidelines call for a

5    lesser sentence.  The Government concedes that standing alone, the 240-month sentence is

6    outside the Guidelines range for a conviction on money laundering.  *See* Docket No. 523.

7    However, the Government argues that the term of imprisonment for money laundering did not

8    affect the Petitioner's ultimate sentence.

9         As stated, "a court need not determine whether counsel's performance was deficient

10   before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. .

11   . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

12   prejudice, which we expect will often be so, that course should be followed."  *Strickland*, 466

13   U.S. at 697.  Review of the record reveals that the Petitioner cannot demonstrate that he was

14   prejudiced; that is, he cannot show "that there is a reasonable probability that, but for counsel's

15   unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 488

16   U.S. at 694.

17        First, Count IV did not affect the offense level that was used in imposing his sentence.

18   The Sentencing Guidelines provide for "grouping" to determine the combined offense level:

19   "The combined offense level is determined by taking the offense level applicable to the Group

20   with the highest offense level and increasing the offense level" in accordance with a table.  *See*

21   USSG § 3D1.4 (1998).  This combined offense level is used to determine the appropriate

22   sentence.  *See* USSG § 3D1.4 (1998).

23        According to the Government, Count IV had been assigned "0" units, and thus did not

24   affect the calculation of the combined offense level and the ultimate sentence imposed.  At the

25   April 17, 1998 sentencing hearing, the court set forth the determination of offense level as

26   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27        [11]  This ground is addressed only in the Petitioner's motion. He did not discuss this issue
     in his subsequent memorandum.

1  follows:

2         The base offense [level] then for Count II, Conspiracy to Distribute
    Methamphetamine, Count III, Conspiracy to Import Methamphetamine, base
3      offense level is 38. Then the adjustments, plus two for the gun, plus two for
    obstruction, brings us up to 42.
4         Count IV, Conspiracy to Launder Monetary Instruments, the maximum
    term for there is different, but for computation purposes due to the higher offense
5      level of the drug offenses, Counts II and III, those are what's used, so Count IV is
    not used. The guideline range for Offense Level 42, . . . for Count II is life, Count
6      III is life, and for Count IV we're looking at 240 months.

7  Docket No. 410a, Transcript of Sentencing, pp. 40-41. Although the resentencing court assigned

8  an offense level of 24 for Count IV, the court specifically stated that Count IV was "not used" to

9  determine to the offense level used to impose the sentence.

10        Second, the Petitioner cannot show prejudice because the sentence on Count IV is

11  concurrent to the drug-related counts. At the sentencing, the court sentenced the Petitioner "for a

12  term of life for each of Counts II and III, to be served concurrently. For Count IV, he is hereby

13  sentenced to a term of 240 months, to be served concurrently with Counts II and III." Docket

14  No. 410a, Transcript of Sentencing, pp. 48-49. Because the 240 months are to be served

15  concurrently, there is no prejudice to the Petitioner.

16        For these reasons, the court finds that the Petitioner was not prejudiced when his counsel

17  did not raise this argument at resentencing. Therefore, the court finds there is no ineffective

18  assistance of counsel.

19        **7. Whether the District Court erred in not inquiring whether jurors were**

20  **actually exposed to newspaper articles that were highly prejudicial to the Petitioner's right**

21  **to an impartial trial**[12]

22        The Petitioner next contends that the District Court erred in not inquiring whether the

23  jurors were actually exposed to highly prejudicial newspaper articles. The Petitioner does not

24  state when these newspaper articles were published, nor does he state the information that these

25  news reports contained. In its response, the Government presumed that the Petitioner is referring

26  _____

27      [12] This ground is addressed only in the Petitioner's motion. He did not discuss this issue
in his subsequent memorandum.

to news coverage prior to and during jury selection, and argues that this ground is not supported by the evidence because the presiding judge questioned the potential jurors whether they had seen, heard or read any news reports about the case. Jurors who responded affirmatively were then examined separately in chambers. The court construes this claim as arguing that prejudice should be presumed or that actual prejudice existed from these newspaper reports that prevented the Petitioner from obtaining a fair jury.

The argument as to presumed and actual prejudice has already been discussed extensively. *See supra*, pages 11-12. The court has already concluded that the Petitioner has not shown any specific facts warranting a presumption of prejudice. As to the Petitioner's argument regarding the newspaper articles, a review of the record reveals that some potential jurors stated that they had read media reports of the case. Upon questioning by the court and attorneys, some jurors said that they could be impartial. Other jurors admitted that they could not, and were excused. The record here does not support a presumption of prejudice. Furthermore, the Petitioner has not shown the existence of actual prejudice, that is, "actual partiality or hostility that could not be laid aside." *Daniels*, 428 F.3d at 1211 (citation and quotation marks omitted). Potential jurors who indicated that they were unable to impartial were excused. In fact, one juror who had admitted to reading news articles but indicated that he could be impartial, was excused. *See* Docket No. 410, Transcript of Jury Selection, Volume I, pp. 136-37.

This claim seems to be based on the Petitioner's mere speculation that the jurors may have been exposed to the news articles. "Such speculation is plainly insufficient to establish prejudice." *Gonzalez v. Knowles*, 515 F.3d 1006, 1016 (9th Cir. 2008). The Petitioner has not shown that there was prejudice based on these newspaper articles, and the record contradicts this claim. The court finds that he has not demonstrated his counsel's performance was deficient, or that he was prejudiced. Accordingly, the court finds that the Petitioner has not met his burden of proving ineffective assistance of counsel.

///

**8. Whether trial counsel's failure to explore the possibility of a plea agreement established ineffective assistance of counsel[13]**

The Petitioner challenges his trial counsel's failure to initiate plea negotiations with the Government prosecutor. The Government contends that the Petitioner had no right to a plea agreement, and thus, his trial counsel could not be ineffective in failing to obtain one.

The United States Supreme Court has long recognized that "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Accordingly, the Ninth Circuit has held that "a defendant does not have a constitutional right to a plea bargain." *United States v. Osif*, 789 F.2d 1404, 1405 (9th Cir. 1986) (citing *Weatherford*, 429 U.S. at 561). The Petitioner cites no authority that a defense attorney has a duty to initiate plea negotiations. Federal circuits have not found that such duty exists. *See e.g., Welch v. United States*, Docket No. 09-2873, 2010 WL 1538866, at *3 (3rd Cir. April 19, 2010) (unpublished) ("It is well-established . . . that counsel does not have an absolute obligation to pursue plea negotiations in every case."); *United States v. Huddy*, 184 Fed. Appx. 765, *767 (10th Cir. June 19, 2006) (unpublished) (rejecting the defendant's argument that her counsel was ineffective for failing to initiate plea negotiations).

Because trial counsel was under no duty to initiate plea negotiations, he was not required to request a plea agreement from the Government prosecutor. Moreover, even if trial counsel had made this request, the prosecutor is not obligated to offer a plea bargain if he prefers to go to trial. *See Weatherford*, 429 U.S. at 561. Such was the case here. The prosecutor did not make a plea offer to the Petitioner and apparently preferred to go to trial. Thus, trial counsel's failure to initiate or explore the possibility of a plea agreement from the Government does not constitute deficient performance. The court finds that the Petitioner has not met the prong of deficient performance under *Strickland*, and accordingly, concludes that there was not ineffective assistance of counsel.

---

[13] This ground is addressed only in the Petitioner's motion. He did not discuss this issue in his subsequent memorandum.

**9. Whether trial counsel's acceptance of the Government's allegation of facts and failure to investigate alternative defenses amounts to ineffective assistance of counsel**[14]

The Petitioner argues that in general, his trial counsel failed to investigate the case and prepare for trial, and was willing to accept the version of the facts presented by the Government. More specifically, he asserts that trial counsel did not investigate alternative lines of defense.

The Government requests the court reject this argument, because the Petitioner has not stated the alternative defenses that should have been investigated.

In analyzing trial counsel's performance, this court recognizes that "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The Petitioner disagrees with the defense theory advanced by trial counsel, and argues that another theory should have been pursued. However, this is clearly a strategic decision made by trial counsel, and the court acknowledges the "strong presumption that counsel's conduct . . . might be considered sound trial strategy." *Strickland,* 466 U.S. at 689. As guided by *Strickland,* the court defers to trial counsel's strategic decisions.

Upon review of the record, the court finds that the Petitioner has not overcome the strong presumption that his counsel provided adequate representation. *See id.* Accordingly, the court finds there was no ineffective assistance of counsel.

**10. Whether trial counsel's failure to request a mistrial after certain media reports constitutes ineffective assistance of counsel**[15]

The Petitioner next argues that trial counsel was ineffective when he did not request a mistrial after a television news report covering his trial showed drugs relating to another case and made references to two unsolved murders. The Petitioner also refers to a newspaper article on drug distribution activity on island that mentioned the Petitioner as being responsible for

---

[14] This issue is discussed in the Petitioner's motion, and in his memorandum as Ground IX.

[15] This ground is discussed in the Petitioner's motion, and in his memorandum as Ground X.

1  murders and identified him as being an alleged leader and organizer of the drug conspiracy.  He

2  contends these news reports may have influenced the jury and prejudiced his case.  The

3  Government concedes that the television news report relating to one witness's testimony was

4  discussed by the court and counsel outside of the jury, but this news report concerned only Roy

5  Cabaccang, and the trial judge determined that this news coverage had no direct correlation to

6  the trial.  *See* Trial Transcript XVI, pp. 2844-2852.

7          The court recognizes the strong presumption that must be afforded to trial counsel's

8  conduct, and that "[j]udicial scrutiny of counsel's performance must be highly deferential."

9  *Strickland*, 466 U.S. 689.  Here, the Petitioner contends that his trial counsel's performance was

10  deficient because he did not request that the court inquire into whether the jurors were aware of

11  these news stories, and thus whether the publicity had prejudiced the case.  "The prejudicial

12  effect of pervasive publicity is tested under the presumed prejudice or the actual prejudice

13  standards."  *Harris*, 885 F.2d at 1361.

14          As was discussed above, *supra* at pages 11-12, there no grounds to warrant a

15  presumption of prejudice.  On the basis of the news reports cited by the Petitioner, the record in

16  this case does not reveal a community that was "saturated" with prejudicial and inflammatory

17  publicity.  *Id.*  Furthermore, the court finds that the Petitioner has not shown actual prejudice.

18  He contends that his trial counsel should have made a motion for mistrial to determine *whether*

19  the publicity affected the jurors.  However, the Ninth Circuit requires that the Petitioner "must

20  show" that the jurors were actually partial.  *See Harris*, 885 F.2d at 1363.  Here, the Petitioner

21  concedes that it was never established that there was actual prejudice.

22          The Petitioner has not overcome the "strong presumption that counsel's conduct falls

23  within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

24  Furthermore, he does not show that the outcome of his trial would have been different, and thus

25  he cannot satisfy the "prejudice prong" under *Strickland*.  *See id.* at 697.  The court finds that the

26  Petitioner has not demonstrated deficient performance and prejudice and thus has not proved that

27  he received ineffective assistance of counsel.

1   **11. Whether trial counsel's failure to request jury sequestration amounts to**

2   **ineffective assistance of counsel[16]**

3           The Petitioner next asserts that trial counsel was ineffective because counsel should have

4   filed a motion to sequester the jury, arguing that there was a "massive amount of pretrial

5   publicity." He contends that his attorney should have anticipated that in Guam's small

6   community, there would have been considerable negative publicity. Although not articulated by

7   the Petitioner, he appears to argue that the news media reports give rise to a presumption of

8   prejudice or demonstrate actual prejudice. He suggests that if the jury had been sequestered,

9   then he would not have been convicted. This ground was not included in the Petitioner's motion,

10  only his memo. This ground was not addressed by the Government.

11          To evaluate the Petitioner's argument for sequestration, the court first addresses the

12  Petitioner's contention that he had been prejudiced by the news reports. As discussed

13  previously, the Petitioner must "show that prejudice should be presumed or that actual prejudice

14  existed." *Turner*, 281 F.3d at 865. This court previously concluded that the Petitioner not only

15  failed to satisfy the three-factor test in *Daniels v. Woodford*, 428 F.3d 1181, for application of

16  the presumption of prejudice, but he also failed to demonstrate actual prejudice as a result of the

17  news coverage.

18          The court next recognizes that, first and foremost, a criminal defendant does not have the

19  right to a sequestered jury. *See Powell*, 679 F.2d at166 n.3. The decision to sequester a jury is

20  within the trial court's discretion. *See United States v. Dufur*, 648 F.2d 512, 513 (9th Cir. 1980)

21  (citing *Frame v. United States*, 444 F.2d 71, 72 (9th Cir.), cert. denied, 404 U.S. 942 (1971)).

22  Even assuming *arguendo* that counsel had in fact sought, but was denied sequestration, the

23  Petitioner has not demonstrated that the decision not to sequester the jury resulted in

24  fundamental unfairness, in accordance with *Powell v. Spalding*, 679 F.2d 163 (9th Cir. 1982), or

25  in actual prejudice to his right to a fair trial. *See United States v. Floyd*, 81 F.3d 1517, 1528

26  ───────────────

27          [16] This ground is addressed only in the Petitioner's memo. He did not raise this issue in his
    initial motion. *See supra*, note 4.

1   (10th Cir.1996). His arguments seems to be that if the jurors had been sequestered, they would

2   not have been prejudiced against him and would not have convicted him. The Petitioner does

3   not acknowledge the mountain of evidence presented during the trial that resulted in his

4   conviction. In addition, he does not discuss the court's frequent admonitions to the jury not to

5   read or watch news reports about the trial. He cannot overcome the strong presumption that he

6   received effective assistance from trial counsel, and he does not demonstrate that the outcome

7   would have been different. The Petitioner fails to prove both deficient performance and

8   prejudice required under the two-prong test set forth in *Strickland*. Accordingly, the court finds

9   there was not ineffective assistance of counsel.

10          **B. Procedural default**

11          In addition to challenging the claims of ineffective assistance of counsel made by the

12   Petitioner, the Government also contends that the Petitioner procedurally defaulted the following

13   two claims by failing to raise them on direct appeal: 1) District Court's failure to inquire

14   whether the jurors were actually exposed to highly prejudicial newspaper articles; and 2) trial

15   counsel's failure to make a motion for mistrial on the basis of certain news media reports. *See*

16   Docket No. 523.

17          "Where a defendant has procedurally defaulted a claim by failing to raise it on direct

18   review, the claim may be raised in habeas only if the defendant can first demonstrate 'cause' and

19   'actual prejudice,' or that he is ''actually innocent.''" *Bousley v. United States*, 523 U.S.614, 622

20   (1998) (citations omitted). *See also United States v. Skurdal*, 341 F.3d 921, 925 (9th Cir. 2003)

21   ("If a criminal defendant could have raised a claim of error on direct appeal but nonetheless

22   failed to do so, he must demonstrate both cause excusing his procedural default, and actual

23   prejudice resulting from the claim of error.") (quoting *United States v. Johnson*, 988 F.2d 941,

24   945 (9th Cir. 1993)). Therefore, the court examines whether the Petitioner has demonstrated

25   cause and actual prejudice, or whether he is actually innocent.

26          Upon review of the record, the Petitioner has not demonstrated cause excusing the default

27   or actual prejudice. "Generally, to demonstrate 'cause' for procedural default, an appellant must

1   show that 'some objective factor external to the defense' impeded his adherence to the

2   procedural rule." *Skurdal*, 341 F.2d at 925. The Petitioner does not explain the cause, that is,

3   the "objective factor," that prevented him from raising this argument on direct appeal. The

4   argument was not raised in his direct appeal. The court is cognizant that "the mere fact that

5   counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim

6   despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*,

7   477 U.S. 478, 486 (1986).

8       Furthermore, this court has already concluded that the Petitioner has not demonstrated

9   prejudice as a result of the newspaper articles or the television news report. Again, the Petitioner

10  offers only speculation that the jury may have been exposed to the newspaper articles. Also, he

11  concedes that it was never established that there was actual prejudice as a result of the television

12  news report.

13      In addition, the Petitioner does not discuss the alternative method of excusing procedural

14  default, which is demonstrating that he is "actually innocent" of the offense. *See Bousley*, 523

15  U.S. at 622. The Petitioner bears the burden of showing that "in light of all the evidence, . . . the

16  trier of the facts would have entertained a reasonable doubt of his guilt." *Id.* at 624. The

17  Petitioner has not shown that the trier of fact would have entertained reasonable doubt. Here, the

18  jury heard from 44 Government witnesses, saw exhibits and written stipulations as well as other

19  documentary evidence. Although the Petitioner himself testified, the jury ultimately returned a

20  unanimous verdict finding him guilty on all counts. The court does not find, that he is "actually

21  innocent." *See id.* at 622.

22      Accordingly, because the Petitioner has not demonstrated cause excusing the default or

23  actual prejudice, the court finds that these claims have been procedurally defaulted.

24  **III. CONCLUSION**

25      For the foregoing reasons, the court finds that the Petitioner has failed to overcome the

26  "strong presumption" that the conduct of his trial, resentencing and appellate counsel "falls

27  within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and

1    has failed to demonstrate that the outcome of his trial would have been different. *See id.* at 697.

2    Consequently, as to each of the grounds argued by the Petitioner, the court concludes that he has

3    not demonstrated deficient performance and prejudice and thus has not proved that he received

4    ineffective assistance of counsel. The court additionally finds that the Petitioner has

5    procedurally defaulted two of these claims.

6        Accordingly, the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or

7    Correct Sentence is **HEREBY DENIED.** Furthermore, the court does not find that the Petitioner

8    "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

9    Therefore, the court will **NOT** issue a certificate of appealability. *See* Rule 11 of the Rules

10    Governing Section 2255 Proceedings for the United States District Courts.

11        **SO ORDERED**.



                         **/s/ Frances M. Tydingco-Gatewood**
                                 **Chief Judge**
                         **Dated: Aug 23, 2010**